# Phoenix Iron Company et al., Plffs. in Err., *v.* Lawrence Lewis, et al.

In an action of ejectment to recover possession of the underlying mineral ore, from the owner of the surface, the defendant claimd title to the ore under a release alleged to have been executed by a former owner of the mineral right to a former owner of the surface, nearly forty years before suit brought, and lost or destroyed. *Held*, on the facts of the case, that secondary evidence offered to prove the contents of such instrument was properly rejected.

Where the plaintiff in ejectment for unmined mineral ore shows title to the mineral right, the fact that defendant, who is entitled to the surface, has been in possession of the land for any length of time, without taking possession of the mineral by mining it, cannot constitute an adverse possession in his favor as against the owner of the mineral right.

(Decided March 15, 1886.)

Error to the Common Pleas of Berks County, to review a

Cited in Finnegan v. Pennsylvania Trust Co. 5 Pa. Super. Ct. 124, 130, 28 Pittsb. L. J. N. S. 68, 41 W. N. C. 19.

NOTE.—Where the surface and mineral rights have been severed no title

judgment on a verdict for plaintiffs in an action of ejectment to recover possession of iron ore in a tract of land in possession of defendants.    Affirmed.

This action was brought by Lawrence Lewis and others against the Phœnix Iron Company, Daniel K. Hagy, and others. The plaintiffs at the trial in the court below, before HAGEN-MANN, J., offered in evidence a deed dated December 7, 1772, from Thomas Rutter and wife and Samuel Potts and wife, to Henry Stauffer, which conveyed the premises of which the tract in question is a part, reserving to the grantors the iron ore contained in said tract.    Plaintiffs showed title, by divers mesne conveyances and descents cast from said Rutter and Potts, to the entire ore reserved in such tract of land, including the ore under the tract in controversy.    Defendants showed a clear title, by divers mesne conveyances from Henry Stauffer, to the surface of this tract of land and claimed title to the underlying ore under the following alleged facts:

In 1847, when Robert M. Lewis and Lawrence Lewis were the owners of the mineral reserve, and Henry Boyer was the owner of the surface of the land, the former, as alleged by defendants, released the mineral reserve for valuable consideration to said Boyer.    March 1, 1854, Boyer, being then the owner of the surface and minerals made a lease of the surface

by adverse possession to the latter is acquired by uninterrupted possession of the former.    Caldwell v. Copeland, 37 Pa. 427, 78 Am. Dec. 436; Kingsley v. Hillside Coal & I. Co. 144 Pa. 613, 23 Atl. 250; Plummer v. Hillside Coal & I. Co. 160 Pa. 483, 28 Atl. 853; Algonquin Coal Co. v. Northern Coal & I. Co. 162 Pa. 114, 29 Atl. 402; Finnegan v. Pennsylvania Trust Co. 5 Pa. Super. Ct. 124, 28 Pittsb. L. J. N. S. 68, 41 W. N. C. 19.    Though the owner of the surface has removed coal during the twenty-one years.    Armstrong v. Caldwell, 53 Pa. 284.    So no abandonment will be worked by a failure to mine coal for more than twenty-one years.    Murphy v. Richardson, 28 Pa. 288; Youngman v. Linn, 52 Pa. 413.    Though the right to mine iron ore may be abandoned by non-user for that period.    Act May 26, 1893 (P. L. 143).

If there has been no severance, title to the mineral may be acquired by adverse possession.    Plummer v. Hillside Coal & I. Co. 160 Pa. 483, 28 Atl. 853; Delaware & H Canal Co. v. Hughes, 183 Pa. 66, 38 L. R. A. 826, 63 Am. St. Rep. 743, 38 Atl. 568.    But it has been held that the owner of both estates, who works a severance by mining coal from mines outside his land, will not lose the mineral rights, where the surface is acquired by adverse possession.    Delaware & H. Canal Co. v. Hughes, 183 Pa. 66, 38 L. R. A. 826, 63 Am. St. Rep. 743, 38 Atl. 568.

and iron ore for twenty-eight years and nine months to one Buck who, February 2, 1857, assigned the same to the Phœnix Iron Company.

In 1857 Henry Boyer died, and in the following year his executors, acting under the direction of his will, sold the tract of land in question and assigned the lease made to Buck to Daniel B. Boyer and Charles Hagy. In 1868 Daniel B. Boyer sold his interest in the tract to Charles Hagy. In 1875 said Hagy died, leaving a widow and children, defendants in this suit, who in July, 1883, renewed the lease with the Phœnix Iron Company for thirty years from the date of its expiration.

The lease from Henry Boyer to Robert S. Buck was duly recorded in Berks county, as was also the lease from the Hagy heirs to the Phœnix Iron Company. During the entire period covered by these leases, the tract has been assessed for taxation, exclusively, to Henry Boyer and his successors, including the Hagys.

Defendants further allege that after the death of Charles Hagy, the title papers of the tract, comprising the deeds of Charles Hagy and the alleged release of the mineral reserve given by the Lewises to Boyer and the lease from Boyer to Buck, were left with Levi Koons, a justice of the peace of Boyertown, Berks county, where the mines are situated, Koons being the agent of the Hagy heirs for the collection of the royalty on the lease for the ore mined by the Phœnix Iron Company.

Koons died September 25, 1882; and upon searching for the title papers of defendants in this action, the only paper which could be found was the lease from Henry Boyer to Buck.

It was admitted that defendants had been in possession of the surface of the whole tract since 1847, but denied that they had mined any coal out of the bed in question, except just previous to the commencement of this suit.

The defendants offered to prove by Walton K. Hagy, one of the defendants, that he saw a release, signed, or purporting to be signed and sealed, by Robert Lewis and Lawrence Lewis, dated about the year 1847; that he saw the paper last with the title papers of this ore tract at Boyertown in the month of July, 1882; that the papers, that is to say, the deed from the executors of Henry Boyer to Charles Hagy and Daniel Boyer, the lease which is in evidence, and the said release were then in the possession of Levi Koons, who was at the time the agent of the heirs

of Charles Hagy to collect the royalty accruing upon the lease
of the mineral tract in suit here, from the Phœnix Iron Com-
pany, one of these defendants and the lessee of the Hagys; that
Levi Koons died in the month of September, 1882, and that the
witness called upon the widow of the said Levi Koons for the
papers and caused a thorough search for them to be made; and
that the deed and the release, together with some papers belong-
ing to other third parties, were not to be found; and that the
only paper which he received was the lease which has been of-
fered in evidence; this to be followed with the evidence of other
witnesses in proof of the same facts.

The plaintiffs objected: (1) because the witness is incompe-
tent, being a party to the record and in interest, and Lawrence
Lewis and Robert Lewis, the persons named, being dead, and
their heirs at law and devisees being plaintiffs in this action;
(2) before the loss of a deed can be shown and secondary evi-
dence of its contents offered, there must be previous proof of its
due execution, which includes proof of its delivery; (3) that
since the passage of the act of 1866, whereby the acts of 1793
and the act of 1786 have been made perpetual, the evidence of
lost deeds and their contents must be obtained and given in ac-
cordance with those acts; and that this is exclusive of all other
ways, because it is the best evidence.

The Court: Counsel for defendants asks the court to make
a ruling upon the offer as presented as a whole; as a whole it is
overruled, and exception noted for defendants. First assign-
ment of error.

The defendants offered to prove by Harriet Koons that she is
the widow of Levi M. Koons, late of Boyertown, Berks county;
that he died in September, 1882; that immediately before his
death, and at the time of his death, he was the agent of the Hagy
heirs, the defendants in this suit with the Phœnix Iron Com-
pany, for the collection of rent or royalty accruing upon a lease
of the minerals or iron ore on the tract in dispute in this case,
said lease having been made by Henry Boyer to Robert S. Buck,
March 1, 1854, it being in proof in this case that the rights
thereunder have devolved upon the Phœnix Iron Company as
assignee of the lessee, and the Hagys as assignees of the rever-
sion; that the title papers of the Hagys to the mineral tract in
dispute here were in the possession of her said husband as their
said agent; that among the title papers was a release, old in ap-

pearance, and dated in 1847, and signed and sealed by Robert
Lewis and Lawrence Lewis, by which release the said Robert
Lewis and Lawrence Lewis released and conveyed to Henry
Boyer all their right, title, and interest in the iron ore in the
tract described in the writ in this case, and which right or in-
terest to said iron ore had been reserved in a deed from Thomas
Rutter and Samuel Potts to Henry Stauffer, in 1774; that the
paper was without any erasure or alteration; that it was light
blue in color; that it had the appearance of old age; that it was
with the title papers of the Hagys; that she heard it read in the
month of July, 1882, when it was in the possession of her hus-
band, and that she personally read it, and from the perusal of
it became acquainted with its contents; to be followed with proof
that in 1847, Henry Boyer, the releasee, was the owner of the
land described in the writ, and that from the time of the execu-
tion of the release, Henry Boyer and his assignees, up to this
time, have been in possession of the minerals in the tract de-
scribed in the writ, and have leased the same, the same having
been taken out and mined by their lessees, and they having paid
the taxes on the same continually and exclusively during the en-
tire period from the execution of the said release up to the pres-
ent time.

Objected to by the plaintiffs: (1) because the witness is in-
competent to testify as to the purpose for which the parties came
there to see her husband. If what was said and done there is
pertinent to the issue now trying, she might testify as to what
was said and done, but she cannot testify as to the purpose of
the parties who participated in that transaction; (2) it is pro-
posed to prove by this witness that one of these papers was a re-
lease. Now, as to whether an instrument is a release, a bond,
or other legal instrument, is a matter of inference to be drawn
from the language of the paper by the court, and not to be testi-
fied to by witnesses. The offer, therefore, is not to prove con-
tents, or the language, or the language as near as the witness can
recollect it, but to prove the legal effect and consequence of the
paper; (3) it is proposed to prove that Robert Lewis and Law-
rence Lewis executed the paper in question, by showing, by the
witness, merely that the paper purported to be a paper signed by
them, whose only knowledge as to the paper is, according to the
statements in the offer itself, her having heard it read and hav-
ing read it herself in July, 1882, after the decease of the parties

who are said to have been designated therein, the relators, and in the absence of the plaintiffs in this case, and in the absence of all other persons whose acquiescence or consent might be held lawfully to be binding upon the plaintiffs; (4) there is no proof of the genuineness of the instrument which it is proposed to show that the witness saw; (5) the preliminary proof of loss and of search does not fulfil the requirements of the law, and is not such as will warrant the court in admitting secondary evidence of the contents of the alleged paper in question, or pretended release; (6) that the testimony is generally incompetent, inadmissible, and irrelevant.

The Court: It is not pretended by the defendants that the witness on the stand saw the execution of this instrument, nor does she know of its delivery, nor is she acquainted with the handwriting of the releasors.

Defendant's counsel: That is all true.

The Court: We will permit you to show by the witness what paper she saw there in July, 1882, of which you propose to prove the contents.

Defendant's counsel: The defendants desire to add to the offer that the release, the contents of which are now offered to be proved, is the same release testified to by Mrs. Koons as having been in the possession of her husband, Levi M. Koons, together with a deed and a lease, and letters testamentary and a will, as the agent of the heirs of Charles Hagy, deceased; and we also propose to prove by her that she, having read the said release, as stated in our offer, recollects its contents.

The Court: The defendants request the court to give a ruling to their offer in the whole; as it stands, the offer is overruled, and exception noted for defendants. Second assignment of error.

The defendants offered in evidence a lease, dated the first day of July, 1852, between Robert M. Lewis and Lawrence Lewis, lessors, and David Reeves, Robert S. Buck, Samuel J. Reeves, and R. C. Nicholls, recorded, etc., which lease refers to a plan or plot of lots embraced in the lease; and the lease itself states that it grants the right of the lessors to the minerals in the mines in Colebrookdale, Berks county, and the plot shows the lots in which they claim to have a mineral right in Colebrookdale.

Objected to by the plaintiffs: (1) because the evidence of a lease by the Messrs. Lewis, of mineral rights other than those

which constitute the subject-matter of this action, does not legally or logically prove or conduce to prove that they had no title in the ore which forms the subject-matter of this action; (2) because it is generally irrelevant and incompetent.

Offer overruled; exception for defendants. Third assignment of error.

Defendants offered to prove that for the last thirty years and upwards the reputed ownership of the minerals in the lot described in the writ was in Henry Boyer and those claiming under him (that is, Charles Hagy and Daniel Boyer, and later Charles Hagy, and since his death his heirs) for the purpose of proving an element of adverse possession.

Plaintiffs objected: (1) because the offer does not prove an element of adverse possession; (2) because a reputation which may have been created by Henry Boyer as against the real owners of the minerals, who reside at a distance from the neighborhood, and may have been so created by design, cannot be used in a court of justice for the purpose of assailing the title of the rightful owner; (3) because the evidence of reputation of ownership is not competent testimony in this case as against the plaintiffs; (4) because it is generally irrelevant and incompetent.

Objection sustained; exception for defendants. Fourth assignment of error.

Defendants proposed to prove that the tract described in the writ was sold by the executors of Henry Boyer; and the announcement was made at the sale that it was clear of everything, that it was without any reservation of any kind, and that the whole thing, including the mineral, was sold.

Objected to by plaintiffs: (1) because the title which passed by executors' sale must be measured by the title which Henry Boyer owned at the time of his decease, and cannot be enlarged by anything that the executors of Henry Boyer may have said or done at the time of the sale of the property; (2) no declarations made by the executors, or their agent, or by any other person at the time of the sale of the said property, and in the absence of the ancestors of the plaintiffs, who then owned the mineral right, can be given in evidence as against the title of the plaintiffs; (3) the testimony is generally incompetent and irrelevant.

Offer overruled, and exception noted for defendants. Fifth assignment of error.

Defendants offered in evidence the deposition of Charles K. Hagy, taken on the 21st day of April, 1885, at the office of Charles VanWert, in the city of Minneapolis, and state of Minnesota, by virtue of a commission issued from the court of common pleas, of the county of Berks, to Charles VanWert, and on file in this case; offered for the purpose of showing that his father, Charles Hagy, and Daniel Boyer, and the heirs of Charles Hagy, were the owners of the minerals described in the writ, from 1858 up to this time, and that they have been in actual possession of the said minerals during that time—for the purpose of proving adverse possession.

The portion of the deposition relied on is the following: "The tract adjoins what is known as the old mine hole, in Boyertown, and, from 1858 up to the time of my father's death, was in his possession, the mines being operated by his tenants during that period; he paid the taxes during that period; and since his death his heirs have been in possession by tenants and paid the taxes."

That part of the deposition offered was objected to by the plaintiffs: (1) because the testimony of the witness was not responsive to the questions which he was answering; the question did not indicate to the plaintiffs or give them any notice that such an answer would be made; and therefore it was impossible for the plaintiffs to frame a cross interrogatory in order to elicit the extent of the witness's knowledge of the matter concerning which he was testifying; (2) the testimony in itself indicates that the witness was not speaking from actual knowledge of the matter concerning which he was testifying; (3) it appearing that the witness had for a number of years been residing in a remote state, many hundreds of miles removed from the locality of the subject-matter of this action, it is manifest that he can have no personal, actual knowledge concerning the matter to which he testifies; but that he must be testifying from hearsay, if his testimony has any foundation whatever; (4) the testimony is also objected to on the ground that the witness is an interested witness, and a party to the record, and therefore is incompetent to give the testimony in question; (5) the matter is generally irrelevant and incompetent.

Offer overruled; exception noted for defendants. Sixth assignment of error.

The defendants offered in evidence a deed, dated the 15th day of October, 1847, from Henry Boyer, of Boyertown, to Robert M. Lewis and Lawrence Lewis, both of the city of Philadelphia, recorded in deed book 54, p. 91, for 145 perches of land; consideration, $400.

To be followed with proof that this 154 perches is part of the tract which in 1801 was acquired by Henry Boyer.

The purpose of the offer is that the deed from Henry Boyer to Robert Lewis and Lawrence Lewis, making no reference to any reservation of ore or mere surface right of Henry Boyer, but purporting to convey a fee simple to the lot and everything that it contains, is evidence tending to negative the claim of the plaintiffs that, in 1847, Robert and Lawrence Lewis were the owners of a right to the ore in the tract contained in the deed, which is part of the Henry Boyer tract, the remainder being the land described in the writ.

Plaintiffs objected: (1) because the offer is irrelevant; (2) because under the terms of the deed of Stauffer to Rutter and Potts, September 24, 1774, Rutter and Potts and their heirs and assigns covenanted to pay and make good any damages to Stauffer, his heirs and assigns, which might at any time be caused by digging, searching for, or breaking the ground, or hauling away ore, should any be discovered, and the purchase from an assignee of the Stauffer title of the strip of ground referred to was not and could not be an admission of want of title in the purchasers to the iron ore, and is not inconsistent with the title shown by the plaintiffs, to wit: the title to the iron ore and minerals under the tract.

Offer overruled; exception noted for defendants. Seventh assignment of error.

Defendants, *inter alia,* presented the following point:

1. If the jury believe that in 1854, and from that time up to the bringing of this suit, Henry Boyer and those claiming under him, including the heirs and devisees of Charles Hagy, deceased, the defendants here, were the owners of the tract of land on which the ore in suit here is situated, and claimed to own not only the surface but the ore likewise; that they leased the ore to Robert S. Buck, March 1, 1854, in good faith, claiming to be the owners thereof, and that the lease was recorded; that the claim of ownership by Henry Boyer, the lessor, and his successors in title, was a matter of general reputation in the neighbor-

hood of the tract during all that time; and that the said lessee and his assignees entered into the possession of said tract in pursuance of said lease, and held exclusive, peaceable, hostile, notorious, visible, and continuous possession from 1854 to the present time, the defendants have shown a good title by adverse possession, and the verdict should be in favor of the defendants.

The court in the charge to the jury answered the above point of defendants as follows:

"We then proceed to consider the second ground upon which a defense can be set up. Have the defendants shown a right by adverse possession? The court says to you that there is no evidence in this cause to show that there has been an adverse possession taken by anyone for a period of twenty-one years, from 1774 down to the bringing of this suit. The lease given in evidence made by Henry Boyer to Robert S. Buck in 1854, and entered of record, is not such adverse and hostile possession as will devest the rights of the plaintiffs in the iron ore contained in this tract of land. One person may be the owner of the surface of the land, and another may be the owner of the mineral right; and the fact that the person who is entitled to the surface is in possession for any length of time, without interfering and taking possession of the mineral right, does not give him a right by adverse possession. The possession of the owner of the surface may run with his land; and until he has in some way taken possession of the mineral,—and he can only take possession of it by mining, or doing some act in the way of mining, that will interfere with the owner of the mineral right,—he cannot be said to be in possession adversely to the owner of the mineral right.

"There being, therefore, no right shown by the defendants under a grant, nor any evidence in the case which would justify the court in submitting to you the question of adverse use or occupation of the iron ore right, the verdict of the jury will have to be for the plaintiffs; and this is a full answer to defendants' first point." Eighth assignment of error.

The court directed a verdict for plaintiffs, and defendants took this writ, assigning errors as above stated.

*J. H. Jacobs, B. Frank Dettra,* and *H. Willis Bland,* for plaintiffs in error.—I. The release was an ancient document, and its due execution was not necessary to be proved.

When ancient instruments are more than thirty years old, they prove themselves. 1 Greenl. Ev. § 21.

A deed thirty years old, accompanied by possession, proves itself, and is regarded as an ancient deed. Bowser v. Cravener, 56 Pa. 132.

If a deed is thirty years old, it may be admitted in evidence without any further proof of its execution. 1 Phillips, Ev. p. 404.

Ancient writings which are proved to have been found among deeds of evidences of land may be given in evidence, although the execution cannot be proved. Ibid.

Some account ought to be given of the place where the deed was found; and the finding of it among deeds of evidence of land is a presumption that they were fairly and honestly obtained, and preserved for use, and are free from suspicion of dishonesty. Ibid.

Where proof of execution would have been dispensed with, in case the original had been produced, proof of execution is unnecessary. Goodier v. Lake, 1 Atk. 246; 1 Starkie, Ev. 392.

In McReynolds v. Longenberger, 57 Pa. 13, the proposition was to prove ancient receipts appearing to be more than thirty years old, accompanying the muniments of title to the land, and found with them by the witness when he received the title papers, and which were retained by him until his house was burned; the court below held this not sufficient proof of execution to admit secondary evidence, and the supreme court in reversing, through Judge THOMPSON, says: "They would have been evidence without preliminary proof of execution, had they been produced and offered as such in court, and for the reason that they were ancient receipts."

If the instrument is lost, the party is required to give some evidence that such a paper once existed, although slight evidence is sufficient for this purpose, and that a bona fide and diligent search has been unsuccessfully made in the place where it was likely to be found. 1 Greenl. Ev. § 558.

It must appear that the instrument comes from such custody as to afford a reasonable presumption in favor of its genuineness. 1 Greenl. Ev. §§ 21, 142; 1 Phillips, Ev. p. 404.

If a document has been placed in the hands of a custodian, he must be required to make due search; and the fruitlessness of such search must be shown before secondary evidence can be let in; and where such person is dead, inquiry must be made of his

legal representatives. 1 Wharton, Ev. § 144; Krise v. Neason, 66 Pa. 253.

It is plain that the proof of loss of a document necessarily involves some descriptive proof of the document itself, although not to the degree of precision subsequently necessary in order to establish a title under it; and a strong probability of its loss has. been held sufficient to let in secondary evidence of its contents. Bouldin v. Massie, 7 Wheat. 122, 154, 155, 5 L. ed. 414, 422, and editorial note.

If the ground for admitting the secondary evidence is that the original has been lost, it ought to be shown that every reasonable inquiry has been made; and the last person in whose possession it is traced should be called to give some account of the instrument. 1 Phillips, Ev. p. 399; Caufman v. Presbyterian Congregation, 6 Binn. 59.

It is sufficient if the party has done all that could reasonably be expected of him under the circumstances of the case, in searching for the instrument. Kelsey v. Hanmer, 18 Conn. 311.

The degree of diligence in the search depends much upon its peculiar circumstances; and it is a question for the court as to whether the loss of the instrument has been sufficiently proved to admit secondary evidence. 1 Greenl. Ev. § 558, p. 645.

The party is expected to show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which were accessible to him. But the object of the proof is merely to establish a reasonable presumption of the loss of the instrument. Ibid.

It is sufficient if the party offering parol proof show such diligence as is usual with good business men under the circumstances. 1 Wharton, Ev. § 142. See cases cited, note 1.

Where a document is lost or destroyed without any suspicion of spoliation attaching to the party offering to prove it by parol evidence, then such parol evidence is admissible to prove its contents, it appearing that due but fruitless efforts have been made to produce it in court. Enders v. Sternbergh, 2 Abb. App. Dec. 31; McReynolds v. Longenberger, 57 Pa. 13; Kaul v. Lawrence, 73 Pa. 410; 1 Wharton, Ev. § 129.

The court must be satisfied that original writing is not producible and would be evidence if produced in order to give sec-

ondary evidence of its contents.   1 Wharton, Ev. § 141; Cauf-
man v. Presbyterian Congregation, 6 Binn. 59.

The witness must have read it or heard its contents from its
author, and be able to speak at least to the substance of such con-
tents.   1 Wharton, Ev. § 140; Coxe v. England, 65 Pa. 212.

It is not necessary that the witness should testify to the pro-
visions of the lost instrument; it is presumed to have been in
the usual form.   Emig v. Diehl, 76 Pa. 359; Brown v. Day,
78 Pa. 141.

If an ancient deed is found in the proper custody and is cor-
roborated by evidence of ancient or modern corresponding en-
joyment, or other equivalent acts, it is to be presumed that the
deed constituted part of the actual transfer of property therein
mentioned.   1 Greenl. Ev. p. 144; McReynolds v. Longenberg-
er, 57 Pa. 13; Bertie v. Beaumont, 2 Price, 303.

II. A party to a suit is a competent witness, at common law,
to prove to the court that an instrument which it is necessary
to produce at the trial is destroyed or lost, so as to let in second-
ary evidence; and there is no distinction in this respect between
cases where the action is upon the instrument, and those where
the question arises indirectly; and it is of no importance in the
order of exhibiting the evidence which fact is first proved,
whether that of the existence and contents of the instrument, or
the fact of destruction or loss.   Fitch v. Bogue, 19 Conn. 285;
1 Greenl. Ev. 14th ed. 1883, § 349; Robinson v. Freeman, 13
W. N. C. 565.

III. The offer covered by the fourth assignment of error, to
prove the reputation in the neighborhood of the ownership in
the mines, was clearly competent.   When a party sets up a title
to ownership by adverse possession, he must prove such a state
of things as would be likely to give notice to any other person
whose title is to be affected by his adverse holding.   As an ele-
ment of this kind of proof, reputed ownership in the adverse
holder is admissible.   Sussex v. Temple, 1 Ld. Raym. 311; 1
Greenl. Ev. § 101; Davis v. Butterbach, 2 Yeates, 211; Samp-
son v. Sampson, 4 Serg. & R. 330.

Adverse possession may be held of minerals.   Arnold v.
Stevens, 24 Pick. 106, 35 Am. Dec. 305; Caldwell v. Copeland,
37 Pa. 427, 78 Am. Dec. 436; Armstrong v. Caldwell, 53 Pa.
287; Barnes v. Mawson, 1 Maule & S. 77; Caldwell v. Fulton,
31 Pa. 475, 72 Am. Dec. 760.

Occupation by tenant is sufficient. Pipher v. Lodge, 16 Serg. & R. 214, 233–236; Pipher v. Lodge, 4 Serg. & R. 310; Watson v. Gregg, 10 Watts, 289, 36 Am. Dec. 176; Union Canal Co. v. Young, 1 Whart. 410, 30 Am. Dec. 212; Jones v. Porter, 3 Penr. & W. 132; Neel v. McElhenny, 69 Pa. 300.

The possession of succeeding occupiers in privity is sufficient. Overfield v. Christie, 7 Serg. & R. 177; Schrack v. Zubler, 34 Pa. 38; Doswell v. De La Lanzo, 20 How. 32, 15 L. ed. 826; Brandt v. Ogden, 1 Johns. 159; Doe v. Campbell, 10 Johns. 477.

Certainty, publicity, and notoriety are the essential elements of adverse possession. Tyler, Ejectment, 890, and cases cited; Ewing v. Burnet, 11 Pet. 41, 52, 9 L. ed. 624, 629; Ellicott v. Pearl, 10 Pet. 412, 9 L. ed. 475; Johnston v. Irwin, 3 Serg. & R. 291.

Payment of taxes is evidence of a claim, and of the extent of such claim. Sorber v. Willing, 10 Watts, 142; Naglee v. Albright, 4 Whart. 291; Hockenbury v. Snyder, 2 Watts & S. 240; Boyer v. Benlow, 10 Serg. & R. 303.

To give color of title does not require the aid of a written conveyance, or other evidence in writing; but it is only necessary that the entry be made under a bona fide, and not a pretended, claim of title, existing in another. La Frombois v. Jackson, 8 Cow. 589, 18 Am. Dec. 463; M'Call v. Neely, 3 Watts, 72; Green v. Kellum, 23 Pa. 254–258, 62 Am. Dec. 332; Tyler, Ejectment, 863–865.

The law designs that the owner shall have ample knowledge on the subject, and a full opportunity to assert his claim; but if he sleeps upon his right for the period prescribed by the statute of limitations, he is presumed to have acquiesced in the claim of another. School Dist. No. 8 v. Lynch, 33 Conn. 330; Pray v. Pierce, 7 Mass. 383, 5 Am. Dec. 59; Tyler, Ejectment, 909.

The possession need only be according to the nature of the thing. Robinson v. Swett, 3 Me. 316.

*Cyrus G. Derr* and *George F. Baer,* for defendants in error. —The authorities are clear that it is absolutely essential, before undertaking by parol to prove the contents of a lost deed, that the loss should be unequivocally established. Parks v. Dunkle, 3 Watts & S. 291; Parke v. Bird, 3 Pa. St. 360; Graff v. Pittsburgh & S. R. Co. 31 Pa. 489.

Proof of the genuineness and of the actual execution and delivery of a lost instrument must precede parol evidence of its contents. Wharton, Ev. § 141; M'Reynolds v. M'Cord, 6 Watts, 288; M'Credy v. Schuylkill Nav. Co. 3 Whart. 424; Slone v. Thomas, 12 Pa. 209; Porter v. Wilson, 13 Pa. 641. See Leazure v. Hillegas, 7 Serg. & R. 323; Pipher v. Lodge, 16 Serg. & R. 214; Parks v. Dunkle, 3 Watts & S. 291; Jack v. Woods, 29 Pa. 375; Emig v. Diehl, 76 Pa. 359.

PER CURIAM:

The plaintiffs below proved a good paper title to the land in question. We have carefully examined and considered all the assignments of error. The evidence was properly rejected, and the points were correctly answered.

Judgment affirmed.